UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| JOSHUA SKINNER, | : | |
| Plaintiff | : | |
| v. | : | Case No. 2:16-cv-127 |
| ALEXANDER TOWER, et. al, | : | |
| Defendants. | : | |

## OPINION AND ORDER

Plaintiff Joshua Skinner brings an action against multiple Vermont police officers for excessive force, false arrest, retaliation for the lawful exercise of First Amendment rights and various state law claims. Defendants Eric Shepard and Alexander Tower filed a Joint Motion for Summary Judgment. ECF 53. Defendants Michael DeFiore and Brian Claffy filed separate, individual motions for summary judgment. ECF 51, 52. DeFiore, Shepard, and Tower also filed a Motion for Rule 54(b) Entry of Judgment. ECF 62.

For the reasons set forth below, Defiore's Motion for Summary Judgment is **granted**, Shepard and Tower's Joint Motion for Summary Judgment is **granted**, and Claffy's Motion for Summary

Judgment is **granted**. Defendants' Motion for Rule 54(b) Entry of Judgment is also **granted**.

## Factual Background

In the evening of May 2013, Plaintiff Joshua Skinner ("Skinner") and his friend Christopher Coffen ("Coffen") came to Burlington, Vermont for a work project. ECF 51-2 at 2. At the time, both men were living in Windham, Maine. *Id*. at 5. While in Burlington, the two men stayed in Coffen's car. *Id*. at 2. Coffen's car was an unregistered Cadillac sedan bearing license plates that belonged to a truck owned by Skinner. *Id*. at 3.

On May 16, 2013, Skinner and Coffen went to Mike's Pizza where they consumed 2 to 3 beers each. *Id*. at 2. They left Mike's Pizza at 10:47 p.m. *Id*.

Around 1:00 a.m. on May 17, 2013, Officer Alexander Tower of the Williston, Vermont police department pulled over Coffen for making a right turn without signaling. ECF 51-2 at 3. Skinner was still in the car, along with a dog. *Id*. at 7. Officer Tower asked Coffen for his license. *Id*. Coffen did not have a license at the time and gave Officer Tower a fake name when asked to identify himself. *Id*. Tower noted that Coffen was very tense, had watery and bloodshot eyes, and smelled faintly of alcohol. *Id*.

Officer Tower returned to his car and spoke with dispatch to verify the name Coffen had given him. ECF 51-2 at 4. Officer

Eric Shepard overheard Officer Tower's radio transmission and drove his police cruiser to the area. *Id*. Officer Shepard pulled his car behind Officer Tower's, checked in with Officer Tower, and then approached the Cadillac. *Id*. at 5. Officer Shepard noted that Coffen's eyes were bloodshot and watery and that the car smelled like alcohol. *Id*. Skinner and Coffen denied that they had been drinking and told Officer Shepard that they worked at Vermont Pub and Brewery. ECF 51-2 at 5.

Officer Shepard was concerned that Skinner and Coffen might initiate a physical confrontation and called Sergeant Brian Claffy to assist. *Id*.

Officer Tower approached the Cadillac again and requested that Coffen step out from the car to perform field sobriety exercises *Id*. Coffen became verbally aggressive and refused to exit the car. *Id*. Officer Tower asked Coffen to turn off the motor. *Id*. Coffen refused and began driving the car away from the officers. ECF 51-2 at 6.

The officers followed the Cadillac in their vehicles, chasing the car at approximately 80 miles per hour. *Id*. Sergeant Michael DeFiore of the South Burlington Police Department heard a request for assistance on his radio and headed towards the scene. *Id*. at 7.

Eventually, the Cadillac stopped on Route 2A in Williston. This section of Route 2A is a two-lane road with a small

3

undefined shoulder and no artificial lighting. *Id*. The nearest commercial area is miles away. *Id*.

Once the Cadillac stopped, officers Tower and Shepard got out of their cars, ordered Coffen to turn off the Cadillac, and commanded Coffen and Skinner to put their hands in the air. ECF 51-2 at 7. The officers ordered Coffen to open his door multiple times but Coffen refused. *Id*.

Sergeant Claffy arrived and instructed Officer Tower to remove Coffen from the Cadillac. *Id*. Tower removed Coffen and handcuffed him. *Id*.

Sergeant Claffy approached the passenger side of the Cadillac. *Id*. Skinner was in the passenger seat and had on his person an empty gun holster, a knife, and a set of brass knuckles. *Id*. A handgun magazine was visible on the floor of the Cadillac. ECF 51-2 at 9. The dog was still in the car and the officers inferred that the two men had been living in the Cadillac. ECF 51-2 at 14.

While Coffen was being handcuffed, Skinner reached out of the driver-side window with his phone, in an effort to record the whole incident. ECF 60-1 at 2. At that point, Sergeant Claffy grabbed his hand and held it until Coffen was completely secured. ECF 51-2 at 9. Sergeant Claffy asked Skinner if there was a gun in the car and ordered Skinner to exit the Cadillac. *Id*. at 10.

4

After Skinner exited the car, Sergeant Claffy patted him down and found the brass knuckles and knife. *Id*. Claffy smelled alcohol coming off of Skinner. *Id*. at 11. Sergeant Claffy asked Skinner again if there was a gun in the car but Skinner refused to answer. *Id*.

Claffy told Skinner to put his hands on the trunk of the Cadillac and took away Skinner's phone. *Id*., ECF 60-1 at 3. Skinner put his hands on the trunk. ECF 51-2 at 11.

At this point, Officer DeFiore arrived on the scene. *Id*.

Skinner refused to answer the officers' questions about where he was going and if he had a valid driver's license. *Id*. at 12. Sergeant Claffy observed that Skinner's eyes were bloodshot and told Skinner that he was concerned about letting Skinner walk away if he was intoxicated. *Id*. at 11, 12. Skinner still did not respond, so Sergeant Claffy went to retrieve an Alco Sensor breathalyzer. *Id*. Skinner refused to take the Alco Sensor test. *Id*.

Skinner alleges that he was not intoxicated, that he was not angry or agitated at the officers, and that he was compliant. ECF 60-1 at 5. Still, Sergeant Claffy made the decision to take Skinner into protective custody. ECF 51-2 at 14.

Claffy and Shepard approached Skinner to take him into custody. *Id*. at 16. Sergeant Claffy attempted to put Skinner's

5

arms behind his back to restrain him, but Skinner began to resist and protest. *Id*. He stiffened his arms and raised his voice. *Id*. At this point, Claffy, Shepard, Tower, and another officer not named in this lawsuit all physically engaged Skinner, attempting to place him in protective custody. *Id*. at 17. Skinner continued to resist and impede the officers' efforts. *Id*.

One officer warned Skinner that he if did not stop resisting, he would be tased. ECF 51-2 at 17. Skinner continued to struggle and said, "Go ahead and fuckin' tase me." *Id*. DeFiore came over to Skinner to assist the officers in restraining him. *Id*. DeFiore again warned Skinner that if he did not comply with the officers, he would be tased. *Id*. DeFiore then applied the taser, in drive-stun mode, to Skinner's chest. *Id*. The taser was activated for four seconds. *Id*.

Skinner spun around to face Officer DeFiore while the other officers attempted to hold him. ECF 51-2 at 18. Another officer deployed his taser in dart mode for five seconds. *Id*. at 19. Skinner then collapsed onto the ground and rolled over onto his stomach. *Id*.

Once Skinner was on the ground, Claffy, Tower, and Shepard attempted to secure Skinner's hands, which were under his body. *Id*. The officers told Skinner multiple times to pull his left hand out from underneath his body, but Skinner refused. *Id*.

Officers held tasers to Skinner, but did not activate them. ECF 51-2 at 20. Officer Tower struck Skinner three or four times in Skinner's right thigh. *Id*. After that, another officer activated his taser for approximately five seconds. *Id*. at 21. When Skinner was still struggling and non-compliant, Officer DeFiore drew his baton and struck Skinner across his left thigh three times. *Id*. at 22. As Skinner continued to resist, DeFiore inserted his baton into the space between Skinner's body and his left arm and used the baton to leverage Skinner's left arm and hand out from underneath his body. *Id*. Tower and Shepard then handcuffed Skinner. *Id*.

Approximately 51 seconds had passed from the time that Skinner had begun resisting to the time that he was handcuffed. *Id*.

After Skinner was handcuffed, Officer Shepard transported him to ACT-1, a treatment center where individuals incapacitated due to alcohol or other drugs can regain their sobriety. ECF 51-2 at 23. ACT-1 refused to admit Skinner after they learned that Skinner was a passenger in a vehicle that had been in a police confrontation, that some force had been used on Skinner, and that Skinner had been tased. *Id*. Shepard then brought Skinner to the Chittenden Regional Correctional Facility ("CRCF"). *Id*. At CRCF Skinner refused to answer any questions or take a

breathalyzer test. *Id*. Skinner was released around 7:30 a.m., after he took a breathalyzer test. *Id*.

Once released, Skinner walked to the Williston Police Station and retrieved his belongings. *Id*. at 24. The police did not return Skinner's brass knuckles, and told Skinner that the brass knuckles he had been carrying were illegal. *Id*.

Skinner brought this lawsuit against Officer Tower, Officer Shepard, Officer DeFiore, and Sergeant Claffy for multiple causes of action. ECF 1. Count I is an excessive force claim against Defiore. Count II is a false arrest claim against Tower, Shepard, and Claffy. Count III alleges retaliation for the lawful exercise of First Amendment rights against Tower, Shepard, and Claffy. *Id*. Skinner also brought state law claims of intentional infliction of emotional distress against DeFiore, Tower, Shepard, and Claffy; assault and battery against DeFiore, Tower, Shepard, and Claffy; and false arrest and false imprisonment against Tower, Shepard, and Claffy.

DeFiore and Claffy filed separate motions for summary judgment, and Shepard and Tower filed a joint motion for summary judgment. ECF 51, 52, 53. Skinner did not respond to the summary judgment motions filed by Defiore, Shepard, and Tower. In responding to Claffy's summary judgment motion, Skinner stated

that he "chooses to abandon all claims except his unlawful seizure claim against Defendant Claffy (Count II)."[1] ECF 60 at 1.

Tower, Shepard, and DeFiore also jointly moved for a Rule 54(b) entry of judgment. ECF 62.

## **Discussion**

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making a determination on summary judgment, the court must construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of establishing that there are no factual issues and that they are entitled to judgment as a matter of law. *Battery Steamship Corporation v. Refineria Panama S.A.*, 513 F.2d 735, 738 (2d Cir. 1975).

---

[1] The full sentence reads: "Having engaged in protracted, detailed discovery, with multiple expert witnesses, and having examined the likelihood of success on each claim, Defendant chooses to abandon all claims except his unlawful seizure claim against Defendant Claffy (Count II)." ECF 60 at 1. Given the context, the Court assumes that the term "Defendant," as used in the first instance above, was a typo and should be read as "Plaintiff."

9

**I. Summary Judgment is Granted on Plaintiff's Claims Against Defendants DeFiore, Tower, and Shepard.**

Normally, in considering a motion for summary judgment, courts must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2004) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

However, "[f]ederal courts may deem a claim abandoned when a party opposing summary judgment fails to address the [movant's] argument in any way. Accordingly, the Court dismisses these claims as abandoned." *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003). Even "[w]here abandonment by a counseled party is not explicit," a court may infer abandonment "from the papers and circumstances viewed as a whole." *Id*. at 196.

Here, Skinner did not respond to DeFiore's Motion for Summary Judgment or Shepard and Tower's Joint Motion for Summary Judgment. Ordinarily, this Court would still have to analyze the merits of these motions. But in responding to Claffy's Motion for Summary Judgment, Skinner chose "to abandon all claims except his unlawful seizure claim against Defendant Claffy (Count II)." ECF 60 at 1. Defendants DeFiore, Tower, and Shepard

filed a Response, indicating that they understood the claims against them to be abandoned. ECF 61. The three defendants also filed a Motion for Rule 54(b) certification and entry of judgment. ECF 62. Skinner replied to neither of these papers. The Court therefore understands that Skinner has abandoned all claims against Defendants Defiore, Shepard, and Tower. As a result, summary judgment is **granted** in favor of DeFiore on Count I and the state law claims of assault and battery and intentional infliction of emotional distress. Summary judgment is also **granted** in favor defendants Tower and Shepard on Counts II and III and the pendent state law claims of assault and battery, intentional infliction of emotional distress, false arrest, and false imprisonment.

**II. Rule 54(b) Certification is Granted on Plaintiff's Claims Against Defendants DeFiore, Tower, and Shepard.**

Generally, any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not final. Fed. R. Civ. P. 54(b). Finality is achieved only if the court "expressly determines that there is no just reason for delay" and "direct[s] entry of a final judgment" under Rule 54(b). *Id*. "[C]ertification under Rule 54(b) should be granted only where there are interests of sound judicial administration and efficiency to be served or, in the infrequent harsh case, where there exists some danger of

hardship or injustice through delay which would be alleviated by immediate appeal." *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992) (citations, alterations, and internal quotation marks omitted).

"[T]he Second Circuit has counseled that the historic policy against piecemeal appeals requires that the court's power to enter such a final judgment before the entire case is concluded . . . be exercised sparingly." *In re Gentiva Sec. Litig.*, 2 F.Supp.3d 384, 387 (E.D.N.Y. 2014) (internal quotations omitted). "The interrelationship of the dismissed and surviving claims is generally a reason for not granting a Rule 54(b) certification." *Hogan*, 961 F.2d at 1026.

DeFiore, Shepard, and Tower request Rule 54(b) certification and entry of judgment as to all the claims originally brought against them.

This is an exceptional case warranting Rule 54(b) certification. First, Plaintiff has abandoned his claims against DeFiore, Shepard, and Tower and has not opposed their motion for Rule 54(b) certification. Presumably, DeFiore, Shepard, and Tower are seeking entry of judgment in order to have this case fully behind them, not for appeal purposes. Since Plaintiff has abandoned his claims against them, there will likely be no appeal. Thus, the "policy against piecemeal appeals" which cautions against frequent granting of Rule 54(b) certification

does not quite apply here. *In re Gentiva Sec. Litig.*, 2 F.Supp.3d at 387.

Plaintiff's claim against Claffy and the abandoned claims against the three other defendants all arise from the same incident. Normally, this interrelationship of claims is a factor weighing against Rule 54(b) certification. But, as mentioned above, in this instance Plaintiff has abandoned those claims and the Court has granted summary judgment in defendants' favor. It is in the interests of judicial efficiency and administration to end the involvement of DeFiore, Tower, and Shepard in this lawsuit, and narrow down the focus of this litigation to the one remaining claim. Thus, there is no just reason for delay.

The Court hereby certifies that the judgment as to the claims against Tower, DeFiore, and Shepard is a final judgment pursuant to Rule 54(b). The Clerk is directed to enter a separate Rule 54(b) judgment of the Court.

**II. Claims Against Defendant Claffy.**

   **A. Summary Judgment is Granted on Count III and Plaintiff's State Law Claims Against Claffy.**

As discussed above, Skinner has abandoned all claims except Count II, the unlawful arrest claim, against Claffy. Summary judgment is therefore **granted** to Claffy on Count III and the state law claims of assault and battery, intentional infliction of emotional distress, and false arrest and false imprisonment.

13

**B. Summary Judgment is Granted on Plaintiff's Unlawful Arrest Claim Against Defendant Claffy.**

The sole remaining claim in this lawsuit is the false arrest claim against Sergeant Claffy. Claffy argues that he is entitled to qualified immunity from Skinner's lawsuit because he did not violate Skinner's clearly established rights. He contends that taking Skinner into protective custody was lawful because (1) there was probable cause to arrest Skinner and (2) he was acting pursuant to the community caretaking doctrine.

In deciding questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry: "The first prong asks whether the facts taken in the light most favorable to the party asserting the injury show the officer's conduct violated a federal right, and the second prong . . . asks whether the right in question was clearly established at the time of the violation." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (internal citations and quotations omitted). Courts may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Regarding the second prong, the Supreme Court has explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

The existence of probable cause to arrest will defeat a claim for unlawful arrest. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). An officer need only have probable cause for one offense to arrest an individual regardless of what that person is ultimately charged with. *Marcavage v. City of New York*, 689 F.3d 98, 109 ("A Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge."). "Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause" exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Under Vermont law, it is illegal to possess brass knuckles with the intent to use them. 13 V.S.A. § 4001. Skinner acknowledges that he was carrying brass knuckles when Claffy made the decision to take him into custody, but argues that there is no evidence that he intended to use them.

There is no Vermont caselaw addressing what evidence is necessary to establish probable cause of intent to use. When the officers patted down Skinner, they also found a knife on his person and evidence of guns in the car. The brass knuckles were not in any type of carrying or display case, but were readily accessible in his right front pocket. Skinner was refusing to answer the officers' questions and did not give them any information about the brass knuckles or why he was carrying them. The defendants' expert John J. Ryan testified that the manner in which Skinner was carrying the brass knuckles established intent to use. ECF 51-19 at 3-4.

Given this situation, there was arguable probable cause for Claffy to arrest Skinner for possessing brass knuckles with intent to use them. This Court is not deciding what constitutes probable cause under Vermont law for the intent to use brass knuckles. This Court is simply finding that given the circumstances in which the officers found the brass knuckles, and the lack of clarity in Vermont law on this subject, officers of reasonable competence could disagree on whether the probable cause test was met.

Skinner was not charged for this offense, but he was brought into protective custody at CRCF and released a few hours later. Given that there was arguable probable cause for Claffy to arrest and charge Skinner, taking him into custody did not

violate a clearly established right. Sergeant Claffy is entitled to qualified immunity.

Claffy also argues that taking Skinner into custody was lawful under the community caretaking doctrine. Since the Court has found that Claffy is already entitled to qualified immunity, it need not reach the question of community caretaking.

Defendant Claffy's motion for summary judgment is **granted**.

## Conclusion

For the reasons set forth above, defendant Defiore's motion for summary judgment is **granted**, defendants Shepard and Tower's joint motion for summary judgment is **granted**, and defendant Claffy's motion for summary judgment is **granted**. Defendants motion for Rule 54(b) entry of judgment is also **granted**.

DATED at Burlington, in the District of Vermont, this 27th day of March, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge